[Civ. No. 7343.   Third Dist.   Aug. 1, 1947.]

JOHN B. GRONENSCHILD, Appellant, v. VIOLET RIT-ZENTHALER, Respondent.

Harry W. Falk and Irwin R. Lichten for Appellant.

E. S. Mitchell for Respondent.

THOMPSON, J.—This suit was instituted by plaintiff for the purpose of having declared a deed to real property to be a mortgage. The defendant, Nora A. Lockard, the grantee,

subsequently conveyed the property to her daughter, the defendant, Violet Ritzenthaler. By means of a cross-complaint the last-mentioned defendant sought to quiet title to the land in herself. From a judgment which was rendered against plaintiff, and a decree quieting title in Violet Ritzenthaler, the plaintiff has appealed.

Prior to March 4, 1932, the plaintiff, John B. Gronenschild, and one Frank O'Connor owned an auto court in Humboldt County known as "Deer Lodge," subject to mortgage held by Nicodemo Luchessi. For default of payments due, the mortgage was foreclosed on the last-mentioned date. The property was sold by the court to the mortgagee, on April 2, 1932, for the sum of $5,920.41, subject to the equity of redemption. July 30, 1932, the plaintiff and Frank O'Connor deeded their entire interest in the property, including their equity of redemption, to Nora A. Lockard, in consideration of the payment to them of the sum of $110. That deed, which the plaintiff sought by this complaint to establish as a mere mortgage, was absolute in form. Upon payment by Nora A. Lockard to the court commissioner in said foreclosure suit of the purchase price and accumulated interest and costs, aggregating the additional sum of $6,157.22, for redemption of the property from foreclosure sale, it was conveyed to her on the last-mentioned date. Six thousand dollars of said purchase money was borrowed by Mrs. Lockard from her daughter, Violet Ritzenthaler. Mrs. Lockard executed and delivered to her daughter a deed to the property on August 12, 1932. That deed was not recorded, but was delivered by the grantee to her attorney, Mr. Mitchell, who at her request placed it in his office safe. The plaintiff knew of that deed. He was present when it was executed and delivered to Violet Ritzenthaler.

Mrs. Lockard was engaged in conducting a dancing academy. She had no knowledge of or disposition to conduct the business of Deer Lodge Auto Court, which she had purchased. She orally consented to plaintiff's taking possession and operating that business, which he proceeded to do on and after July 30, 1932. At the same time she executed a written option to plaintiff and Frank O'Connor to purchase the property at any time within five years upon payment to her of said sum of $6,157.22, and interest, which option was not exercised. Mrs. Lockard subsequently contributed the further aggregate sum of $7,886.84 to the "maintenance and

improvements on the Lodge.'' December 20, 1934, Mrs. Lockard executed to plaintiff and Frank O'Connor, in consideration of the sum of $500, to be paid on or before July 30, 1937, a two-year extension of said option to purchase the property upon the same terms, with the agreement that they should remain in possession and operate the business in consideration of whatever profits were derived therefrom. The last-mentioned extension of option was not exercised. July 21, 1939, Mrs. Lockard executed a further extension to *plaintiff*, only, of said option to purchase the property, expiring April 1, 1940, upon consideration of payment to her of the further sum of $1,000 on or before the last-mentioned date. The last extension specifically provides that if the option is exercised and the property is purchased before its expiration, said sum of $1,000 shall be considered as a part of the purchase price, but that, if the option is not exercised before its expiration date of April 1, 1940, plaintiff will, without previous notice, forthwith vacate and deliver possession of the property to the said Nora A. Lockard. The last-mentioned option was not exercised nor was the $1,000 paid. Plaintiff remained in possession of the property. On July 14, 1933, Frank O'Connor executed to the plaintiff a conveyance of all his right, title and interest, including his right of redemption from the foreclosure sale, to said Deer Lodge property. Mr. O'Connor died in September, 1937.

After trial of the case, at which oral and documentary evidence was adduced, findings were adopted favorable to the defendants in every essential respect. The court determined that the property was regularly sold in 1932, upon foreclosure proceedings, and that the mortgagee became the purchaser thereof, subject to the equity of redemption; that on July 30, 1932, for a valuable consideration, the plaintiff and Frank O'Connor conveyed by deed absolute, to Nora A. Lockard all their right, title and interest, together with their right of redemption, in and to said property; that the said Nora A. Lockard thereupon redeemed said property from foreclosure sale by paying the purchaser thereof the full amount in the sum of $6,157.22; that Nora A. Lockard thereby became the owner of said property, and that she subsequently conveyed it to her daughter, Violet Ritzenthaler, who is now the owner and entitled to possession thereof; that the challenged deed from the plaintiff and

Frank O'Connor to Nora A. Lockard, dated July 30, 1932, was an absolute deed of conveyance of all the right, title and interest, including the right of redemption which the grantors possessed, and that it was not a mere mortgage. The court further found that plaintiff had no title or interest in said property. Judgment was rendered accordingly, to the effect that plaintiff take nothing by his cause of action; that the defendant, Violet Ritzenthaler, is the owner and entitled to possession of said real property; that plaintiff has no right, title or interest therein, and that title to said land be quieted in the said Violet Ritzenthaler. From that judgment the plaintiff has appealed.

The appellant contends that the findings and judgment are not supported by the evidence, and that the deed of July 30, 1932, together with the several options to purchase the property, and the conduct and transactions between the parties, including plaintiff's continued possession of the property, indicate that the said instruments constitute a mere mortgage.

We are of the opinion the findings and judgment are adequately supported by the evidence. There is a conflict of evidence regarding the transactions, but the evidence supports the conclusions of the court that Nora Lockard redeemed the property for its full foreclosure sale amount, and purchased the right of redemption from the former owners in consideration of the sum of $110, taking an absolute deed of conveyance from them. Mrs. Lockard testified that the value of the property at the time of her purchase did not exceed the sum of $8,000; that she did not loan any money to plaintiff, but paid plaintiff and O'Connor $110 to purchase their equity of redemption, and that the $7,886.84, subsequently paid to plaintiff was for the "maintenance and improvements on the Lodge." There was no antecedent debt due to Lockard for which the deed could be construed to become a mortgage security. The evidence shows that she has invested in the property over $14,000, and that she received no interest or payments from plainitff during the period of about 13 years, except $500 which was paid to her for the first extension of option to purchase the place, which was made in July, 1937.

The plaintiff testified that, prior to the suit for foreclosure, which he knew was to be filed, and after the decree had been

rendered in March, 1932, he tried to persuade Mrs. Lockard to refinance the property for him. He said:

"I had spoken to Mrs. Lockard in regards to re-financing the property. . . . Q. Did you enter anything definite with Mrs. Lockard at that time? A. No, I did not. . . . She said she didn't have the money, but her daughter did have money and when she came up, after school vacation, that she would speak to her and possibly it could be arranged."

The plaintiff did not testify that Lockard ever told him positively that she would loan him the money, or that she would refinance the mortgage. He merely infers that "it was generally understood" between them, that she would refinance the mortgage indebtedness. He was asked:

"At the time you made that deed did you have any conversation with Mrs. Lockard about re-purchasing the property? . . . A. Well, no, that didn't come up in the matter at all; it didn't come up—— there was nothing said after the papers was drawn up, there was nothing more said about it. We had our understandings prior to that.

. . . . . . . . . . . . .

"Mr. Falk: Now what conversation did you have with Mrs. Lockard on that subject, as to whether she should take title or whether this would be a mortgage or whatever it might have been, what conversation—— A. Well, I never had no conversation with Mrs. Lockard in regards to that. Mr. Mitchell was my attorney and that was his advice to me, . . . that was the only thing that could be done under the circumstances. . . . Q. You say these documents were executed on the advice of Mr. Mitchell? A. Positively. He was my attorney."

Plaintiff testified that Mrs. Lockard consulted with his attorney, Mr. Mitchell. But Mitchell was not called as a witness. It does not appear what conversation, if any, occurred between Lockard and Mitchell. The plaintiff stated that he retained possession of the property and operated the motor court business; that he subsequently received sums of money from Mrs. Lockard with which he constructed improvements and purchased furnishings, but contended that they were for his own benefit. He claimed that Mrs. Lockard told him to "Go ahead and improve it and sell it; all I want is Violet's money out of there."

In view of the conflict of evidence with regard to the intention of the respective parties as to whether the deed of

conveyance, together with the accompanying options to re-purchase the property, constituted a mortgage, rather than an absolute deed, this court is required to affirm the judgment since the trial court determined that fact against the appellant, and there is ample evidence to support that finding. (17 Cal. Jur. 757, §§ 59 and 60; *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583]; *First National Trust & Savings Bank* v. *Edmonds*, 28 Cal.App.2d 26 [81 P.2d 1052]; *Robinson* v. *Barnard*, 5 Cal.App.2d 396 [42 P.2d 711].)

It is true that the deed and accompanying options should be construed together as one transaction. (Civ. Code, § 1642.) But the option and renewals, the latter one of which expired April 1, 1940, and provides that the consideration of $1,000, if paid before the date of expiration, may be considered ''as part of the purchase price,'' indicate that the deed was not intended by the parties as a mere mortgage. That option was not exercised. It expired without the payment of said sum. Clearly the option was *to repurchase the property*. That instrument provides that if paid before expiration of the option said sum of $1,000 would apply as *part of the purchase price* of the land. The options and renewals, together with the language contained therein support the finding of the court that the deed was not intended as a mortgage.

It is also true that every transfer of an interest in property, other than in trust, *made only as·security for the performance of another·act,* is to be deemed a mortgage. (Civ. Code, § 2924.) But the trial court found that the transfer by deed was not a mortgage for the security of an existing debt or for money to be loaned to the grantors, but that it was an absolute deed of conveyance. ██ The rule is established by a multitude of authorities to the effect that a deed which is absolute in form may be shown to have been intended as a mortgage to secure the payment of a debt or for the performance of an obligation. (17 Cal.Jur. 735, § 41.) ██ But the question as to whether the deed, absolute in form, is a mortgage is a mixed question of law and fact to be determined from all the evidence adduced, both written and oral, together with the circumstances of the entire transaction. ██ The presumption of law, independently of clear and convincing evidence to the contrary, is that a deed, which is absolute in form, is just what it purports to be, and not a mere mortgage. (*Stevens* v. *Fetterman,* 76 Cal.App. 741, 753 [246 P. 102]; *Goodfellow* v. *Goodfellow,* 219 Cal. 548, 554 [27 P.2d 898].) ██ The burden of proving that a deed is a mere mortgage rests on

the party who asserts that fact. (*Kohn* v. *Parent*, 174 Cal. 570 [163 P. 1008]; *Vitruvian Corp.* v. *Laubisch*, 49 Cal.App.2d 360 [121 P.2d 784]; 17 Cal.Jur. 755, § 57.) In the Beeler case, *supra*, it is said:

" 'That a deed purporting on its face to convey the title absolutely may be shown by parol evidence to be something else—namely, a mortgage—is a striking exception to the general rule, and it has been universally held that the character of the instrument cannot be thus changed except upon clear and convincing evidence.' . . . But whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is a question for the trial court to decide. [Citing cases.] In such case, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review on appeal."

We may not hold, as a matter of law, contrary to the findings and judgment of the trial court, that the deed to Lockard, dated July 30, 1932, was intended by the parties to be a mere mortgage. We are bound by the findings in that regard.

The money with which the foreclosed mortgage was redeemed and the property purchased by Lockard, was furnished by her daughter, Violet Ritzenthaler. Lockard subsequently executed and delivered her deed to that property to her daughter. The plaintiff was present and knew of that fact. The court found that Ritzenthaler is the owner and entitled to possession of the property, and therefore quieted title in her pursuant to her cross-complaint. Those findings are adequately supported by the evidence.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1947.